IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN C.,

       Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security,[1]

       Defendant.

Civil Action No.
3:18-CV-1254 (DEP)

_____

APPEARANCES:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OF COUNSEL:

PETER A. GORTON, ESQ.

LUCY WEILBRENNER, ESQ.
Special Assistant U.S. Attorney

---

[1]     Plaintiff's complaint named Nancy A. Berryhill, as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g) are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on December 10, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: December 13, 2019
Syracuse, NY

```
 1                UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF NEW YORK

 3

 4   JOHN C.,                          )
                                       )
 5                                     )
              Plaintiff,               ) CASE NO. 18-CV-1254
 6                                     )
        vs.                            )
 7                                     )
     NANCY A. BERRYHILL,               )
 8                                     )
              Defendant.               )
 9   _____)
```

**TRANSCRIPT OF PROCEEDINGS**
BEFORE THE HON. DAVID E. PEEBLES
TUESDAY, DECEMBER 10, 2019
SYRACUSE, NEW YORK

**FOR THE PLAINTIFF:**
  LACHMAN & GORTON
  By:  PETER A. GORTON, ESQ. (Present via telephone)
  PO Box 89, 1500 East Main Street
  Endicott, New York 13761-0089

**FOR THE DEFENDANT:**
  SOCIAL SECURITY ADMINISTRATION
  By:  LUCY WEILBRENNER, ESQ. (Present via telephone)
  625 JFK Building, 15 New Sudbury Street
  Boston, Massachusetts 02203

1       (Chambers, via telephone.)

2       THE COURT: All right. Well, I'd like to thank

3  counsel for excellent arguments. This is an interesting case

4  and one quite honestly that I found very difficult to grapple

5  with, and I'll explain more in a moment.

6       This is a proceeding that was brought by the plaintiff

7  pursuant to 42 United States Code Section 405(g) to challenge a

8  determination by the Commissioner of Social Security.

9       The background is as follows. Plaintiff was born in

10 May of 1974. He is currently -- I did the math quite wrong. He

11 is currently 45 years of age, was 36 years old at the alleged

12 onset of the disability in October 2010. He has a tenth grade

13 education where he attended regular BOCES, BOCES all caps

14 letter, classes. Plaintiff is somewhere between

15 five-foot-nine-inches in height. That's at 306, five-ten or

16 six-foot at 50, 63, 270, and 503, and weighs somewhere between

17 266 and 278 pounds.

18      The plaintiff lives with two sons. They were 11 and 7

19 years old in April 2013. They live in a two-story house in the

20 southern tier of New York State.

21      Plaintiff is right-handed. Plaintiff last worked in

22 or about November 2010. He was a line worker at the Endicott

23 Interconnect Technology. He was laid off according to page 55

24 and subsequently drew unemployment. His prior jobs include

25 factory positions, maintenance work positions, as a bartender,

1  and in positions that involved mostly standing and significant
2  lifting.
3        Physically, plaintiff has suffered from
4  diverticulitis. He has degenerative disk disease in his lumbar
5  spine. He has an abdominal hernia as well as a small inguinal
6  hernia and he suffers from asthma, which was diagnosed later in
7  March of 2016, that's at page 851, as COPD.
8        In February 2010, plaintiff underwent surgery, a
9  sigmoid resection, the Hartmann procedure, and a colonoscopy
10 where three -- colonostomy where three inches of his colon were
11 removed from Dr. H. Tsai.
12       In May 2013, he had abdominal wall reconstruction
13 using mesh by Dr. Peter Ojo, O-j-o. He had a second abdominal
14 wall reconstruction surgery in February 2014. He wears a waist
15 strap continuously.
16       Plaintiff also suffers from, as I indicated, back
17 injury. Magnetic resonance imaging testing in 2013 revealed
18 moderate disk bulges at L4-L5 and L5-S1 but without evidence of
19 neurocompression.
20       Plaintiff has suffered in addition mentally with
21 moderate depression, has been on Wellbutrin. He has counseled
22 with LCSW Patricia Jordan.
23       The plaintiff's primary physician has changed a couple
24 of times. He was with Lourdes primary care with FNP Frances,
25 F-r-a-n-c-e-s, Munroe, M-u-n-r-o-e. He transitioned in about

December 2012 to Dr. Gasparis, Demetrios Gasparis, G-a-s-p-a-r-i-s, at Endwell Family Physicians. And then later to Heather Rottenburg -- Rattenburg, R-a-t-t-e-n-b-u-r-g, in January 2016 with United Health Services.

Plaintiff has been prescribed various medications over time including Trazodone, tramadol, ome -- I have a hard time with that one -- o-m-e-p-r-a-z-o-l-e, inhalers, Symbicort, Chantix, Wellbutrin, and Ultram. Plaintiff smokes and has since he was 12 years old.

In terms of activities of daily living, plaintiff drives, cooks, does laundry, attends his son's baseball games, grocery shops, engages in care for his two children, showers, dresses, watches television, reads, and enjoys music.

Procedurally, as counsel alluded to, this case has had a tortured history. The plaintiff applied for Title II disability insurance benefits on November 18, 2011, alleging onset disability date of October 1, 2010. The alleged disability based on hernia, back pain, diverticulitis, social anxiety, and chronic bronchitis.

A hearing was conducted by ALJ John P. Ramos on April 30, 2013. Judge Ramos issued a decision on June 24, 2013, that was unfavorable to the plaintiff. The Social Security Administration counsel -- Social Security Administration appeals counsel denied review on January 12, 2015.

A proceeding was conducted, commenced in this court,

1  civil action No. 15-CV-118, and the matter was remanded, ordered
2  remanded by me on January 26, 2016.
3  ALJ Ramos issued a second decision on May 18, 2016,
4  again unfavorable to the plaintiff. The Social Security
5  Administration appeals counsel denied plaintiff's application
6  for review on April 7, 2017.
7  The matter was remanded by this court on consent after
8  another proceeding was commenced on April 26, 2017. On
9  September 15, 2017, the appeals counsel issued a directive.
10 That's at pages 961 to 63, returning the matter to a new
11 administrative law judge. A hearing was conducted on July 9,
12 2018, by Administrative Law Judge Kenneth Theurer,
13 T-h-e-u-r-e-r. Judge Theurer issued a decision on August 20,
14 2018. That was again unfavorable to the plaintiff. This action
15 was commenced on October 24, 2018.
16 In his administrative decision, ALJ Theurer applied
17 the familiar five-step test for determining disability. He
18 first noted plaintiff's last date of insured status of June 30,
19 2014. He concluded that plaintiff had not engaged in
20 substantial gainful activity prior to that date and subsequent
21 to his alleged onset date of October 1, 2010.
22 At step two, ALJ Theurer concluded that plaintiff
23 suffers from severe impairments that provide more than minimal
24 limitations on his ability to perform basic work functions
25 including degenerative disk disease in the lumbar spine,

1  obesity, and abdominal hernia, and asthma.

2  He concluded at step three, however, that those
3  conditions did not meet or medically equal any of the listed
4  presumptively disabling conditions, specifically considering
5  listings 1.04, 3.03, 5.02, and 5.08 of the Commissioner's
6  regulations and the listings therein.  After surveying the
7  evidence, the administrative law judge concluded that plaintiff
8  is capable despite his conditions of performing sedentary work
9  with additional limitations.

10  He then found at step four that plaintiff was
11  incapable of performing his past relevant work, which was
12  characterized as a circuit board assembler and as a janitor.

13  At step five, acknowledging the shifting of burdens,
14  ALJ Theurer concluded that if the medical vocational guidelines
15  or the grids set forth at Commission's regulations were applied,
16  rule 201.25 would direct a finding of no disability.  He
17  concludes, however, that based on the job erosion associated
18  with the additional limitations and the RFC finding, that the
19  vocational expert testimony should be elicited.  Based on that
20  testimony, he concluded that plaintiff is capable of performing
21  notwithstanding his limitations as an addresser, a table worker,
22  and an order clerk in the food and beverage industry and
23  therefore is not disabled.

24  As you know, my task is limited to determining whether
25  the determination resulted from that application of proper

1 principles and is supported by substantial evidence, substantial
2 evidence being defined as such evidence as a reasonable mind
3 would find sufficient to support a conclusion.
4 　　　　The Second Circuit has made it clear that this is a
5 demanding standard.  It is deferential and is found in Brault
6 versus Social Security Administration, 683 F.3d 443, that the
7 substantial evidence standard means once an ALJ finds facts, he
8 can reject those facts only if a reasonable factfinder would
9 have to conclude otherwise, citing additional cases from the
10 Second Circuit and the Eighth Circuit.
11 　　　　The arguments raised by the plaintiff address work
12 pace and attendance, the treatment of asthma, and specifically
13 whether there should have been a temporal limitation to the
14 exposure of irritants, the failure to include any psychological
15 impairment at step two of the five-step analysis, whether the
16 sit-stand option should have been included, and of course, the
17 argument that the step five determination is infected because
18 the hypothetical posed to the vocational expert did not reflect
19 these errors or did include these errors.
20 　　　　In terms of pace and workplace attendance, this is an
21 issue in which Mr. Gorton is a pioneer and one that has
22 generated considerable attention including in the Second
23 Circuit.  To set the stage, I will say the vocational expert in
24 this case opined that if the plaintiff were off task more than
25 10 percent of the time, he would not be employable.

1         Dr. Gasparis, a treating source, on April 23, 2013,
2    opined that plaintiff would have a severe limitation in this
3    area, meaning more than 33 percent. That's at 336.
4         Dr. Rattenburg, similarly a treating source, on
5    April 5, 2016, stated similarly at 845.
6         Dr. Wiesner stated on April 26, 2013, the plaintiff
7    would have to lie down at unpredictable intervals at 371 and
8    that he'd have a marked, meaning more than 33 percent limitation
9    in the area of work pace. That's at 373.
10        And LCSW Jordan indicated that plaintiff would be off
11   task more than 33 percent of the time both on March 29, 2016,
12   that's at 883, and June 29, 2018. That's at 1431.
13        Dr. Chandrasekhar was not specifically asked
14   unfortunately for an opinion on work pace. So it is extremely
15   difficult to determine whether her opinion could be relied upon
16   as substantial evidence sufficient to overcome the treating
17   sources' determination in this regard.
18        What complicates the issue is confederation of a
19   couple of decisions from the Second Circuit that at first blush
20   could be contradictory or considered contradictory. One is of
21   course Gavazzi versus Berryhill. These are not published
22   decisions. This one is reported at 687 Fed Appendix 98. It's
23   from April 2017. And a subsequent decision in Smith versus
24   Berryhill, 2018 Westlaw 3202766. I think it may have a Federal
25   Appendix cite now, and that's from June of 2018, both involving

```
           18-CV-1254                                                    9
```

1  clients represented by Mr. Gorton.

2      Trying to reconcile these is difficult but not

3  impossible.  I think it's clear that there is no set-in-concrete

4  record -- I mean principle that an ALJ can never reject

5  uncontradicted medical opinions based solely on his or her

6  interpretation of the evidence.  Clearly the better practice is

7  to obtain a medical expert to overcome treating source and other

8  competent medical evidence.

9      The evidence that is replied upon by the plaintiff is

10 in the form of check box forms, which I understand by its very

11 nature, both sides in cases of this nature have to rely very

12 often on such things because of doctor time and the fact that

13 they're pressed.

14     So the real question is:  Did the administrative law

15 judge provide an adequate explanation for rejecting the

16 opinions, unanimous opinions concerning the plaintiff being off

17 task?  And there was discussion in the ALJ's decision on that

18 issue.  He noted, for example, that plaintiff had no problems

19 paying attention and stated so, and that he could finish tasks.

20 That's at 167 and 895.

21     He observed that plaintiff appeared to have been able

22 to attend appointments, maintain eye contact in conversation

23 with his examiners, and demonstrated no ongoing deficits in

24 attention, concentration, or memory.  He also noted that the

25 reports of symptoms given by the plaintiff at mental status

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

exams during the relevant period, that being the period before June 30, 2014, did not show problems in concentration.

The administrative law judge also noted the rigors of plaintiff's activities of daily living including his ability to attend to childcare for his two young children. So it would be more desirable if Dr. Chandrasekhar were asked an opinion concerning plaintiff being on task, but I think this is one of those situations like Smith and less like Gavazzi where the administrative law judge did do a deep dive into the medical records and the evidence before him and determined that the off task opinions were not supported by substantial evidence.

In terms of asthma, I think that there is sufficient evidence in the record to support the limitation of concentrated, avoiding concentrated exposure to irritants without a temporal limitation. Clearly the RFC contains that limitation, and that was posed to the vocational expert at 934. SSR85-15 does contain language that suggests that this is an important element that needs to be considered. And where an individual can tolerate very little noise, the impact on the noise, dust, et cetera, the impact on ability to work would be considerable because very few environments are entirely free of pollutants and damaging conditions.

In this case, there is no opinion that he had to avoid all limitations -- all exposure to environmental irritants. And in any event, if there is an error in this regard, there is --

1  Dr. Glass did say should avoid irritants. That's at page 317.
2  Dr. Magurno said should avoid irritants at 308.
3  Dr. Chandrasekhar opined that plaintiff should only be
4  occasionally exposed to irritants. That's at 1183.
5        But I think you can safely read the page 74, in
6  conjunction with the opinion of Dr. Glass, to say that
7  concentrated is appropriate. And in any event, I agree with the
8  Commissioner that any error in this regard is harmless because
9  according to the Commissioner titles, the three positions
10 located would not require exposure to irritants.
11       On the step three, psychological impairment,
12 obviously -- step two, I'm sorry. Step two requires exclusion
13 of only the weakest of conditions. It is a de minimis test, and
14 it can only exclude conditions that have no more than a minimal
15 effect on the ability to work. Plaintiff did suffer from
16 depression and anxiety, but it's clear that it worsened over
17 time and that his significant treatment with LCSW Jordan did not
18 begin until after the closed period, which ended June 30, 2014.
19 In any event, the failure to list a psychological or mental
20 impairment at step two was harmless because the ALJ did proceed
21 to step three.
22       It is, I note, also plaintiff's burden to establish
23 the existence of a condition that imposes more than minimal
24 limitations under Poupore. The early treatment notes that I
25 reviewed reflected that plaintiff denied psychological symptoms,

stated he was doing well and he was not taking his medication. So plaintiff failed to carry a burden to show limiting effects of any mental conditions, and in any event, any error in this regard is harmless.

The last issue is the sit and stand, and sit and stand is clearly an issue. There is no provision in the RFC for a sit-stand option. Dr. Gasparis at 336 indicated the need for a sit-stand option. Dr. Wiesner indicated plaintiff must alternate every 10 to 15 minutes at 371, and Dr. Rattenburg also at 846 indicated that plaintiff should be able to alternate positions every 30 minutes.

The SSR83-12 indicates that the need to sit and stand might not be consistent with sedentary work, and SSR96-6 does indicate an RFC should be specific on the frequency of any need to alternate. However, the ALJ rejected this requirement due to the lack of discomfort and no demonstrated need and relied on Dr. Chandrasekhar, and Dr. Chandrasekhar at page 1180 communicated that plaintiff can sit for five hours at one time without interruption and can stand and walk for four hours without interruption. That is sufficient to provide substantial evidence. The ALJ also cited plaintiff's activities of daily living with the sit-stand need.

So I find in sum that the errors complained of by the plaintiff did not occur, that the determination of the ALJ is supported by substantial evidence, acknowledging that this is a

1  court case.  And so I will grant judgment on the pleadings to
2  the defendant.
3      If this case is appealed and goes to the Second
4  Circuit, I hope the Second Circuit will issue some guidance to
5  both the courts and the administrative law judges as to how to
6  weigh and evaluate these types of situations in the future.
7      I hope you both have happy holidays.  Thank you.
8      (The matter concluded at 3:46 p.m.)

**18-CV-1254**

CERTIFICATION OF OFFICIAL REPORTER

I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 12th day of December, 2019.

**/s/ JACQUELINE STROFFOLINO**

JACQUELINE STROFFOLINO, RPR

FEDERAL OFFICIAL COURT REPORTER